Bhanu Prakash
22330 Homestead Rd
Cupertino, CA 95014
+1 (415) 825-7830
prakash.legal@proton.me

Pro Se

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BHANU PRAKASH,<br><br>    Plaintiff,<br><br>    v.<br><br>WALMART Inc., Kiran Reddy and Does One through Twenty,<br><br>    Defendants. | Case No. 5:24-cv-08376-NC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART INC.'S MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: April 29, 2026<br>Time: 11:00 a.m.<br>Courtroom: 5 (4th Floor)<br>Judge: HON. NATHANAEL M. COUSINS |

# TABLE OF CONTENTS

**I. NOTICE OF MOTION**     **3**

**II. MEMORANDUM OF POINTS AND AUTHORITIES**     **4**
    A.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    B.    PLAINTIFF'S COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    STATEMENT OF THE ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . 4
    D.    STATEMENT OF DISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . 5
       1.     Walmart, Inc. was inconsistent and did NOT enforce maintaining policies, procedures, and practices governing the plaintiff's employment. . . . . . . . . . . . . . 5
       2.     Plaintiff was deliberately deceived into accepting a Senior Manager I, Software Engineering position In Walmart's Information Technology Department . . . . . . 6
       3.     Walmart's Gross Negligence Resulted in the Delay of Plaintiff's Start Date . . . . 7
       4.     Walmart's Offer To Allow Plaintiff To Work As A Contractor is Entirely Irrelevant    7

5.     Plaintiff Starts Work for Walmart as a Full-Time Employee with Minimal to No Assistance from Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6.     The assertion that the plaintiff requests permission to explore other employment options at Walmart is both vague and irrelevant . . . . . . . . . . . . . . . . . . 8

7.     Plaintiff's Job Performance Issues are a Fabrication, Which the Plaintiff Vehemently Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8.     Plaintiff Is Issued A Yellow Disciplinary Action Notice For Reasons Unrelated To Job Performance And As A Form Of Retaliation . . . . . . . . . . . . . . . . 11

9.     Plaintiff Is Again Issued A Red Disciplinary Action Notice For Reasons Unrelated To Job Performance And As A Form Of Retaliation . . . . . . . . . . . . . . 12

10.     Walmart Terminates Plaintiff's Employment Without Informing Him or Providing Reasons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11.     Plaintiff's Complaints Were Primarily Directed at Fraudulent and Discriminatory Hiring and Rating Practices . . . . . . . . . . . . . . . . . . . . . . . . . 13

E.     LEGAL STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . 14

F.     LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1.     Walmart Is NOT Entitled To Summary Judgment On Plaintiff's First Claim For Relief For National Origin Discrimination In Violation Of The FEHA . . . . . . . 15

     a.     Plaintiff Also Establishes a Prima Facie Case for Discrimination to Reinforce this Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     b.     Walmart has FAILED to Established it Terminated Plaintiff's Employment For A Legitimate, Non-Discriminatory Reason . . . . . . . . . . . 19

     c.     Plaintiff has CLEARLY Established That Walmart's Stated Reason For Terminating Plaintiff's Employment Was A Pretext For Unlawful Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2.     Walmart Is NOT Entitled To Summary Judgment On Plaintiff's Second Claim For Relief For Retaliation In Violation Of The FEHA . . . . . . . . . . . . . . . . . . 20

     a.     Plaintiff Also Establishes a Prima Facie Case for Retaliation to Reinforce this Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     b.     Plaintiff has CLEARLY Shown That Walmart's Stated Reasons For Terminating His Employment Was A Pretext For Unlawful Retaliation . . . 23

     c.     Plaintiff has CLEARLY Established That Walmart's Stated Reasons For Terminating His Employment Was A Pretext For Unlawful Retaliation . 23

3.     Walmart Is NOT Entitled To Summary Judgment On Plaintiff's Wrongful Termination In Violation Of Public Policy Claim . . . . . . . . . . . . . . . . . . . . . 24

**III. CONCLUSION**     **25**

PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART INC.'S MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Cases**

*Adames v. Mitsubishi Bank, Ltd.*, 751 F.Supp. 1548 (1990), 15
*Ajaxo Inc. v. E\*Trade Group Inc.*, 135 Cal.App.4th 21 (2005), 15
*CCarter v. Dolce*, 647 F.Supp.2d 826 (2009), 21
*CCellini v. Harcourt Brace & Co.*, 51 F.Supp.2d 1028 (1999), 20
*Chisolm v. 7-Eleven, Inc.*, 383 F.Supp.3d 1032 (2019), 20
*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), 18
*Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217 (1998), 24
*Godwin v. Hunt Wesson*, Inc., 150 F.3d 1217 (1998), 20
*Iwekaogwu v. City of Los Angeles*, 75 Cal.App.4th 803, 816 (1999), 16
*Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999), 15
*McDonnell Douglas v. Green*, 411 U.S. 792 (1973), 21
*Morgan v. Regents of University of California*, 88 Cal.App.4th 52, 67-68 (2000), 16
*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), 18, 19
*Scott v. Solano County Health and Social Services Dept.*, 459 F.Supp.2d 959 (2006), 24
*Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104 (1991), 15
*Soria v. Univision Radio Los Angeles*, Inc., 5 Cal.App.5th 570, 591 (2016), 16
*Stevenson v. Superior Court*, 16 Cal.4th 880, 889-90 (1997), 24
*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), 23
*Trop v. Sony Pictures Entertainment, Inc.*, 129 Cal.App.4th 1133, 1145 (2005), 16
*Wilson v. City of Fresno.*, 763 F.Supp.3d 1073 (E.D. CA 2025), 21

**Other Authorities**

§90 of the Restatement (Second) of Contracts, 6
Fed. R. Civ. P. 56(a), 5, 15
Fed. R. Civ. P. 56(c), 5, 10, 14
Fed. R. Civ. P. 56(e), 5
Fed. R. Civ. P. 56(h), 5

**Statutes**

Cal. Gov. Code §12923 (b), 18
Cal. Gov. Code. §12940, 25
Cal. Gov. Code. §12940(a), 21
Cal. Gov. Code. §12940(h), 22
Cal. Gov. Code. §12940(j), 22
Cal. Lab. Code. §1194(a), 25
Cal. Lab. Code. §203, 25
Cal. Lab. Code. §970, 25

## I.   NOTICE OF MOTION

PLEASE TAKE NOTICE that Plaintiff Bhanu Prakash ("Plaintiff") will and hereby does move the

Court to deny Defendant Walmart, Inc.'s ("Walmart" or "Defendant") Motion for Summary Judgment or,

alternatively, Partial Summary Judgment.

This motion is made on the grounds that there are indeed triable issues of material fact as to the summary judgment sought, and Defendant is therefore not entitled to summary judgment, or partial summary judgment. Plaintiff contends that genuine disputes exist regarding the material facts, which necessitate a trial to resolve.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities below, the Declaration of Bhanu Prakash, the pleadings and records on file, and such further argument and evidence as may be presented to the court.

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A. INTRODUCTION

This response addresses the motion for summary judgment filed by the Defendants. It outlines the key arguments and evidence demonstrating why summary judgment is inappropriate in this case, emphasizing the existence of genuine disputes of material fact that warrant a trial.

### B. PLAINTIFF'S COMPLAINT

The plaintiff concurs with the defendants' characterization of the outstanding complaints.

### C. STATEMENT OF THE ISSUES TO BE DECIDED

1. The plaintiff successfully establishes the essential elements of his first claim for relief for national origin discrimination in violation of the FEHA. Contrary to the defendant's assertions, the plaintiff has provided proper citations and evidence demonstrating discrimination. The material facts presented by the defendant are inadmissible, disputed or irrelevant, and the plaintiff has shown that the alleged non-discriminatory business reason is a pretext for unlawful discrimination.

2. The plaintiff successfully proves the essential elements of his second claim for relief for retaliation in violation of the FEHA. With proper citations and evidence, the plaintiff demonstrates retaliation, and the defendant's purported non-retaliatory business reason is a pretext. Again the defendant's material facts are inadmissible, disputed or irrelevant.

Case No. 5:24-cv-08376-NC

PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART INC.'S MOTION FOR SUMMARY JUDGMENT WITH
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

3. The plaintiff's third claim for relief, wrongful termination in violation of public policy, is a derivative of the first two claims. Plaintiff successfully proves this using the required five-element framework frequently used in the 9th Cir.

## D.  STATEMENT OF DISPUTED FACTS

Defendant argue that plaintiff was terminated due to his poor job performance and hence they are entitled to summary judgement on the three remaining claims. And since it is based on these facts, defendants motion must be denied if Plaintiff can show at least one material facts in dispute. As explained in detail here, some of these facts are unrelated to the claims and others are disputed, inadmissible. They lack credibility and does not comply with the evidentiary standards, offering hearsay, speculation rather than concrete evidence Fed. R. Civ. P. 56(a) , Fed. R. Civ. P. 56(c) , Fed. R. Civ. P. 56(e) , Fed. R. Civ. P. 56(h) . Instead of citations readily available with the Defendants, they rely on declarations in stead. They have lied under oath in the past (EOF No. 65), their declarations should be held inadmissible. Even the declaration fails to provide specific performance evaluations or disciplinary records. Without concrete evidence these facts are conclusory, defendants declaration alone cannot meet the burden of proof required for summary judgment.

**1.  Walmart, Inc. was inconsistent and did NOT enforce maintaining policies, procedures, and practices governing the plaintiff's employment.**

Defendants claim they have policies and procedures governing plaintiff's employment. The mere existence of policies and procedures in no way proves that defendants complied with these policies and procedures. They implemented no procedures to ensure the policies were adhered to, there by voiding their legal enforceability. As detailed below, these policies and procedures were routinely violated by the defendants themselves. They were also inconsistently maintained for instance; the merging of manager I and II was shared over email but was not available in any of the policy manual, appraisal protocols were routinely shared over emails but not maintained as part of policy manual, interview protocols were not followed as listed, disciplinary action protocols were not followed as documented, termination protocols were not followed as documented, ethics complaints (on Manager and HR) were suppose to be

confidential however Plaintiffs complaints were immediately shared with the Manager and HR (Prakash Decl., ¶5).

**2.    Plaintiff was deliberately deceived into accepting a Senior Manager I, Software Engineering position In Walmart's Information Technology Department**

Plaintiff was deceived into accepting a Senior Manager I role, claims here (EOF No. 42 at 10 ¶2) are inadmissible. They lack credibility and does not comply with the evidentiary standards, offering speculation rather than concrete evidence Fed. R. Civ. P. 56(c), Fed. R. Civ. P. 56(e). Plaintiff rejected other job offers and interviews relying on a verbal offer (Exhibit A) for a Manager II position as agreed in the interviews (Exhibit B). However when Manager I offer was presented for signing a few days later in the guise of immigration restriction, Plaintiff was also promised that it will be corrected to Manager II. As it will be detailed in the discrimination argument section, plaintiff had no option but to accept this offer. The alteration in offer terms justifies applying promissory estoppel, making the signed offer non-binding §90 of the Restatement (Second) of Contracts . In the same section, Defendants claim that Mr. Moroney was leaving, but no evidence has been shared regarding the same, in fact he stayed in the team even after plaintiff joined the team. There were other misrepresentations here as follows;

- Software Load Balancer (SLB) team was a smaller team, and a 'Senior Manager II' was never hired in this team. That role never existed, nor did the defendants share any credible evidence for it.
- Plaintiff oversaw this team sometimes as need (Prakash Decl., ¶6).
- Mr. Reddy never interviewed plaintiff, this (Exhibit B) shows the interviewers lineup, Mr. Reddy was never part of the panel. Mr. Reddy spoke with the plaintiff upon plaintiff's request after a verbal offer was negotiated (Exhibit C).
- Plaintiff was told during the interview by Mr. Moroney that he was being interview for the Manager II Edge Services Team. No other interview was conducted for the SLB team (Exhibit C).
- Apparently the internal plan was to offer Senior Manager I position (ECF No. 42 at 10:22-25), however plaintiff was always lead to believe it was for a Senior manager II position (Exhibit B).

### 3. Walmart's Gross Negligence Resulted in the Delay of Plaintiff's Start Date

This statement of fact is not completely accurate, and also not relevant to any of the claims. Again claims here (EOF No. 42 at 11 ¶3) are inadmissible. They lack credibility and does not comply with the evidentiary standards, offering speculation rather than concrete evidence Fed. R. Civ. P. 56(c), Fed. R. Civ. P. 56(e).

Defendants claim that the plaintiff notified walmart of O1 Visa after the offer was made. This is an intentional lie (Fed. R. Civ. P. 56(h)), plaintiff had shared this fact even before the interview process (Prakash Decl., ¶7) and agreed to start the interview process only after the defendant promised to take up O1 visa transfer upon employment. The delay in transfer was entirely due to the defendants inability to file O1 visa transfer process. They were unwilling to let plaintiff do this on his own (Prakash Decl., ¶8), nor did they start the process. Since Plaintiff was on O1 Visa, it is unclear why defendants even offered H1 transfer instead.

### 4. Walmart's Offer To Allow Plaintiff To Work As A Contractor is Entirely Irrelevant

This statement of fact too is irrelevant to any of the claims and also disputed. Again some of the claims here (EOF No. 42 at 11 ¶4) are inadmissible. They lack credibility and does not comply with the evidentiary standards, offering speculation rather than concrete evidence Fed. R. Civ. P. 56(c), Fed. R. Civ. P. 56(e).

Defendants claim that the O1 visa had not been issued by March 2022 in fact they never applied for a visa transfer in the first place.

### 5. Plaintiff Starts Work for Walmart as a Full-Time Employee with Minimal to No Assistance from Defendants

Again claims here (EOF No. 42 at 12 ¶5) are vague, irrelevant and inadmissible. They lack credibility and does not comply with the evidentiary standards, offering speculation rather than concrete evidence Fed. R. Civ. P. 56(c), Fed. R. Civ. P. 56(e).

Plaintiff and Mr. Reddy met on a weekly basis and maintained a one-on-one meeting document (Exhibit D) where plaintiff kept Mr. Reddy appraised regularly about the progress, ongoing issues, concerns

showing that he didn't get the necessary support to onboard efficiently. This document was maintained till the the end of the year, and since plaintiff didn't receive support from Mr. Reddy on any of the issues and improvements raised, they both decided to stop maintaining this document.

**6.    The assertion that the plaintiff requests permission to explore other employment options at Walmart is both vague and irrelevant**

This statement of fact too is vague, irrelevant to any of the claims. Again claims here (EOF No. 42 at 12 ¶6) are inadmissible. They lack credibility and does not comply with the evidentiary standards, offering speculation rather than concrete evidence Fed. R. Civ. P. 56(c), Fed. R. Civ. P. 56(e).

This is a disputed fact that defendant conferred with HR (EOF No. 42 at 12:13-17), they haven't provided any evidence for the same. Plaintiff was the one to raise this with HR (Exhibit E), a meeting was arranged with Mr. Ravi Piddinti (Prakash Decl., ¶9), and plaintiff was informed for the first time that his claims for fixing this role issue will not be supported (Exhibit F).

Plaintiff disputes this fact that Mr. Reddy was supportive of Plaintiff's request to pursue other roles (EOF No. 42 at 12:20-21). Mr. Reddy would speak with the other teams and provide negative feedback about the engineers trying to leave the team (Prakash Decl., ¶10). Plaintiff is personally aware of a situation where Mr. Reddy shared a bad feedback about Mr. Rahul Vutukuri when he applied for a job at a different team. After Mr. Reddy and HR secretly complained to the other team about Mr. Vutukuri's performance, they stopped considering Mr. Vutukuri for the other role he was shortlisted for, and he did not know why he was rejected.

Plaintiff disputes the statement that senior manager II position is one level above Senior Manager I (EOF No. 42 at 13:2-4), around august 2023 Walmart merged Senior Manager II and Senior Manager I position into a Senior Manager position since there were no real difference between the two roles however they were being misused often like in the case of the plaintiff.

Plaintiff disputes the statement (EOF No. 42 at 13:7) where Defendant claims that plaintiff was unable to find a role in March 2023, in fact Walmart went on a hiring freeze (Prakash Decl., ¶11) and hence all inter team moves were stopped, plaintiff was unable to initiate transfer to another team. Plaintiff disputes the statement (EOF No. 42 at 13:8-9) about transition into and individual contributor (IC) role. This was

PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART INC.'S MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

clarified with Mr. Reddy a few months before as well (Exhibit G).

**7.  Plaintiff's Job Performance Issues are a Fabrication, Which the Plaintiff Vehemently Disputes**

Again claims here (EOF No. 42 at 12 ¶7) are inadmissible. They lack credibility and does not comply with the evidentiary standards, offering speculation rather than concrete evidence Fed. R. Civ. P. 56(c), Fed. R. Civ. P. 56(e), Fed. R. Civ. P. 56(c).

Plaintiff disputes the following statement (EOF No. 42 at 13:14-17) as deceiving (Fed. R. Civ. P. 56(h)).

> *"From the inception of his employment to May 2023, when he stated that he wanted to remain as the manager of the Edge Services Team, Mr. Bhanu job performance as the Edge Services Team manager had been deficient. (Reddy Decl., ¶20.)"*

Appraisal remarks for the same duration (Exhibit H) shows an appraisal remark of 'successful' meaning plaintiff was doing his job well, and this rating was by Mr. Reddy himself. Plaintiff had achieved a lot in the first year and shared this list to Mr. Reddy for appraisal (Prakash Decl., ¶12). Mr. Reddy watered down many achievements and submitted only a subset of it, and still rated plaintiff 'successful' citing that new employees cannot be rated outstanding (4/4). However, Mr Reddy shared some raving reviews about plaintiffs performance, and this was around February to April 2023 (Exhibit H). Here are some of the quotes from Mr. Reddy himself, Mr. Piddenti was also part of this appraisal discussion, these are their combined statements;

> *"Thanks you for the help to manage the admind team from April 2022.*
> *Under your leadership team admind team was able to setup organized project delivery rhythm.*
> *You were able to setup scrum practices across US, IDC teams.*
> *You changed teams attitude regarding how we respond to site emergencies by setting up on-call schedule and setting expectation.*
> *There have here have been important process changes in terms of how we intake feature requests and setup priorities. you were able to onboard new engineer to team and guide them to be productive engineer.*
> *Some the important delivery includes Cl/CD automation in QA for deploying admind changes, closure on long standing items and creating move forward plan for feature re-leases, splunk dashboard that helps us figure out LIVE issues in faster manner.*
> ***Prakash you showed passion in understanding the system*** *and improve them in terms of architectural, design & code perspective."*

Plaintiff disputes the following statement (EOF No. 42 at 13:25-28)

> *"Because Plaintiff had only recently started when the annual review was issued, Mr. Reddy rated as successful. (Id.) The mid-year review is issued in about August. (Id.)"*

This appraisal period was from February 01, 2022 to January 31, 2023 (Exhibit H). There has never been

any reported issues with plaintiff's performance during the aforementioned period or afterwards. Even for the mid-year appraisal in August 2023, Mr. Reddy rated Plaintiff mostly successful indicating no problems with Plaintiff's performance. Defendants also acknowledge in this email that Plaintiff was doing his job and attending meetings between March 2023 and June 2023.

Plaintiff disputes statements (EOF No. 42 at 14:1-20) regarding mid year review for 2023. In response to the defendant's assertion that they have made numerous negative remarks about the plaintiff's performance without credible proof, it is important to emphasize that such statements are inadmissible. The lack of substantiated evidence renders these remarks speculative and prejudicial, failing to meet the evidentiary standards required for admissibility. Consequently, these allegations should be disregarded by the court as they do not contribute to a fair and just evaluation of the case.

Performance related citations by the Defendant here are feedback from Mr. Saibal Saha (EOF 42-2, Exh C) and from Mr. Karan Dalal (EOF 42-2, Exh F). Mr. Saha is form Walmart offshore team, reported to Plaintiff and hence he could not possibly know all the projects Plaintiff worked on, reports never do their Managers appraisal (Prakash Decl., ¶13). In addition, Plaintiff had concerns about Mr. Saha's performance a few months before this feedback sharing (Exhibit D) and Mr. Saha was disciplined for this by the plaintiff and Mr. Reddy, so this is clearly Mr. Saha's retaliation on the plaintiff. Mr. Reddy used that incident to evoke unfavorable feedback about the plaintiff from Mr. Saha. Just a few days before Mr. Saha's feedback, Plaintiff had filed ethics complaint (EOF No. 42-1 , at Ex. C, D) and the ethics investigator had discussed this with Mr. Reddy. Plaintiff did not have any communication about these projects in email with Mr. Saha, his statements are inadmissible hearsay warranting an objection under Fed. R. Civ. P. 56(c) . He abruptly shares feedback about the plaintiff without any background or any context, rendering it inauthentic and hence inadmissable under Fed. R. Civ. P. 56(c) .

The only other performance related feedback is from Mr. Dalal (also from Walmart offshore), an individual who was unrelated to the case at hand. This individual, a new employee at Walmart, joined the company after March or April 2023. Despite this, the feedback pertains to events from early 2023 or 2022, a period during which the individual had no involvement or connection to the Plaintiff's work or even to Walmart. This is inadmissible hearsay and cannot be presented in admissible form at trial warranting objection under Fed. R. Civ. P. 56(c) . The individual providing this feedback is not only

PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART INC.'S MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

unrelated to the Plaintiff's work but also appears to have been coached by the Defendant to share negative feedback because (i) only Plaintiff and Mr. Reddy were aware of these projects (Prakash Decl., ¶14) and (ii) there is no other documentary evidence regarding the contents of the email, context or the background of it. Mr. Saha and Mr. Dalal are both from Walmart India office and Plaintiff is from Walmart Sunnyvale, US office. Mr. Michael Knepprath refused to attend Plaintiff's meetings for weeks on end between February, 2023 and September 2023 (Prakash Decl., ¶15), and claimed to be working closely with Mr. Reddy, so there was no way for the Plaintiff to help him with his tasks. If not retaliation, it is unclear what else prompted them so send out such an email without any relevant context immediately after an ethics complaint. Feedback from non related offshore employee may not accurately reflect plaintiffs performance in local context. Also Mr. Reddy has complete control over hiring and firing of offshore employees, so they had a vested interest in supporting Mr. Reddy. Since their statements are inadmissible hearsay and also lack the necessary foundation, plaintiff will be filing a motion to strike these statements shortly (Prakash Decl., ¶16).

## 8. Plaintiff Is Issued A Yellow Disciplinary Action Notice For Reasons Unrelated To Job Performance And As A Form Of Retaliation

Plaintiff disputes defendants statements about his job performance (EOF No. 42 at 12 ¶8) and the issuance of this disciplinary action. They lack credibility and does not comply with the evidentiary standards, offering speculation rather than concrete evidence Fed. R. Civ. P. 56(c), Fed. R. Civ. P. 56(e). As established in the previous sections, defendants never established plaintiff's job performance deficiencies till the emails in early 2023 and the ethics and other complaint (EOF No. 42-1 , at Ex. C, D) was filed on June 6, 2023. And since there was never a performance deficiency, this disciplinary action cannot exist. Plaintiff disputes these statements from the defendants (EOF No. 42 at 14:25-28).

> *"Mr. Reddy decided to issue Plaintiff the DA1 Yellow because this was his first formal disciplinary notice and Mr. Reddy continued to hope Plaintiff's job performance would improve. (Id.)"*

Everything in the disciplinary action document was a fabrication (Exhibit I). This was issued while Mr. Reddy shared emails that Plaintiff was doing well (Exhibit J). Mr. Reddy claims Plaintiff did not attend meetings, while in the emails (Exhibit I), he says Plaintiff was in meetings but didn't speak. Even if

PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART INC.'S MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

plaintiff attended the disciplinary action meetings he declined, Defendants would have negative feedback on his performance since retaliation was their primary motive.

Between August 5th and 22nd, Plaintiff published (Exhibit K) an article about Walmart's illegal hiring practices (without referencing Walmart), and around August 21, 2023, Plaintiff had published this within Walmart internal teams and also published this in a global team meeting (Prakash Decl., ¶17) with VP, and other leaders with entire Walmart, here however Plaintiff revealed to everyone that this scam happened in his team. Plaintiff also received engagements (Prakash Decl., ¶18) from other teams supporting this and telling him how unethical this was. The very next day, at 5:55 PM, Mr. Reddy promptly commenced disciplinary proceedings against the plaintiff on August 22, 2023 (EOF No. 42-2 Exh E). This timing, defendants knowledge of the complaints, and the circumstances surrounding the disciplinary action clearly shows this was an act of retaliation.

**9. Plaintiff Is Again Issued A Red Disciplinary Action Notice For Reasons Unrelated To Job Performance And As A Form Of Retaliation**

Plaintiff disputes defendants statements about his job performance (EOF No. 42 at 15 ¶9). They lack credibility and does not comply with the evidentiary standards, offering speculation rather than concrete evidence Fed. R. Civ. P. 56(c), Fed. R. Civ. P. 56(e). As established in the previous sections, defendants never established plaintiff's job performance deficiencies. These allegations should be disregarded by the court as they do not contribute to a fair and just evaluation of the case.

**10. Walmart Terminates Plaintiff's Employment Without Informing Him or Providing Reasons**

Plaintiff disputes defendants statements about his termination (EOF No. 42 at 15 ¶10). They lack credibility and does not comply with the evidentiary standards, offering speculation rather than concrete evidence Fed. R. Civ. P. 56(c), Fed. R. Civ. P. 56(e). Plaintiff was not informed about the termination, nor was plaintiff informed about the reason for termination. Defendants have failed to provide any credible documentation on this statement, it is important to emphasize that such statements are inadmissible. The lack of substantiated evidence renders these remarks speculative and prejudicial, failing to meet the evidentiary standards required for admissibility. Plaintiff was not provided adequate

information and reasoning surrounding the disciplinary action. Plaintiff had raised an ethics complaint (Exhibit L) in this regard in compliance with the disciplinary action policy (Exhibit M). As per the policy, plaintiff was suppose to be afforded the due process of investigation, and upon unsuccessful resolution, plaintiff was suppose to be afforded the option of escalating and getting it before the concerned team. None of this were afforded, on November 7, 2023, plaintiff was told that the disciplinary action did not find any wrong doing so Plaintiff had escalated this (Exhibit N) as per the policy. However on the same evening, Plaintiff was sent the last payslip (Exhibit O) stating that Plaintiff's employment was terminated Consequently, these allegations should be disregarded by the court as they do not contribute to a fair and just evaluation of the case.

**11. Plaintiff's Complaints Were Primarily Directed at Fraudulent and Discriminatory Hiring and Rating Practices**

Plaintiff disputes defendants several statements in this section (EOF No. 42 at 16 ¶11). It is vague and unclear which claim this is pertaining to, nevertheless most of the facts here are disputed. They lack credibility and does not comply with the evidentiary standards, offering speculation rather than concrete evidence Fed. R. Civ. P. 56(c), Fed. R. Civ. P. 56(e).

Plaintiff disputes defendants statement (EOF No. 42 at 16:6-9) as follows;

> *"Plaintiff claimed Walmart offered him this position as part of an alleged 'scam.' (Emmert Decl., Exh. A, p. 86:11-16, Exhs. B and C.) While Plaintiff's theory is unclear, Plaintiff claims Walmart's offering him the Senior Manager I position somehow constituted fraud"*

However in the same motion, they answer this confusion (EOF No. 42 at 7:17-21) as follows, so it should be noted that they are acutely aware of how this 'scam' has been perpetuated.

> *"Plaintiff's discrimination claim is based on his contention that Walmart allegedly deceived him into accepting the Senior Manager I position by allegedly telling him during the interview process and before giving him his written offer that he would be hired in a Senior Manager II role but providing him a written offer stating that he was being hired in a Senior Manager I role and hiring him into that role."*

Plaintiff disputes defendants following statements in this section (EOF No. 42 at 16:12-14).

> *"Plaintiff, however, does not claim he was offered the Senior Manager I position because of his national origin, his immigration status, or other protected classification. (Emmert Decl., Exh. A, pp. 86:11-16, 118:25-119:24.)"*

The above statement is an unmistakable lie about whats in the exhibit, and in the deposition. In the first

snippet (86:11-16) above Plaintiff was very specifically asked if he believes this hiring downgrade is 'race' related, to which plaintiff answered 'I wouldn't know'. Meaning, in addition to National Original discrimination, plaintiff wouldn't know what other factors played a role.

Observation in the second snippet (119:24.) is deliberately deceitful. During the deposition, plaintiff was asked if an email plaintiff shared (Exhibit P) was a complaint on discrimination. Plaintiff was simply clarifying that the objective of the email was to convey that Mr. Ravi Peddinti was not basing his observation on facts and Mr. Peddinti did not offer any proof or explanation as to why he felt plaintiff was lying even though plaintiff shared all the necessary supportings establishing the scam.

Plaintiff further disputes defendants following statements in this section (EOF No. 42 at 16:15-17).

> *"Walmart investigated Plaintiff's claims that he was allegedly mislead into accepting the senior Manager I position and determined that his claims were not substantiated as he was hired into the position Walmart offered. (Emmert Decl., Exhs. D to F.)"*

The above statement is a flagrant misrepresentation of whats in those exhibits. They only contain email exchanges between HR and plaintiff. Despite many emails, ethics complaints, and reminders, plaintiff was never involved in any investigation, no credible proofs were ever shared about the investigation, they haven't been attached to this motion. They haven't been shared as part of this discovery as well, which proves credible investigation was never executed.

Defendant provides no documentation for most of the facts listed above, such as memoranda, emails or texts between the individuals involved. In this age of connectivity, this lack of contemporaneous documentation is unusual for such a serious matter. If the Court finds that any of the above material facts are disputed, Defendants' Motion for Summary Judgment must be denied.

### E. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment, or partial summary judgment, is appropriate only when there is no genuine dispute over any material fact, and the moving party is entitled to judgment as a matter of law (Fed. R. Civ. P. 56(c) ). The Defendants asserts that the plaintiff had job performance issues; however, the defendant's own statements indicate that the plaintiff was performing well during the same timeframe. These contradictions, along with other material facts in dispute, preclude summary judgment under Fed. R. Civ.

P. 56(a) .

When deciding a motion for summary judgment, the Court must consider all evidence and draw all reasonable factual inferences in favor of the nonmoving party (*Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999) ). Summary judgment is always questionable in employment discrimination cases involving motive and intent, particularly where the issue is national origin versus race - *Adames v. Mitsubishi Bank, Ltd.*, 751 F.Supp. 1548 (1990) .

The Ninth Circuit has repeatedly cautioned that summary judgment is normally inappropriate in employment discrimination cases. See, *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104 (1991) .

§90 of the Restatement (Second) of Contracts: This section deals with the doctrine of promissory estoppel, where a promise is enforceable if the promisor should reasonably expect it to induce action or forbearance, and it does induce such action or forbearance.

### F. LEGAL ARGUMENT

**1. Walmart Is NOT Entitled To Summary Judgment On Plaintiff's First Claim For Relief For National Origin Discrimination In Violation Of The FEHA**

Defendants incorrectly titled this section as "Walmart Is Entitled To Summary Judgment On Plaintiff's Second Claim For Relief For Retaliation In Violation Of The FEHA" (EOF No. 42 at 17 ¶1), going by the contents, it looks like they are arguing against Plaintiff's first claim on National Origin Discrimination. Plaintiff presents compelling direct evidence of discriminatory intent by the defendant. The more recent (*Ajaxo Inc. v. E\*Trade Group Inc.*, 135 Cal.App.4th 21 (2005) ) decision from 2005 provides a clear definition, emphasizing that direct evidence "directly proves a fact, without an inference or presumption, and which in itself, if true, conclusively establishes that fact".

The internal communications reveal a premeditated plan to hire the plaintiff for the position of Senior Manager I. However, the defendant publicly advertised and conducted interviews for the ostensibly higher-ranking position of Manager II (Exhibit B). This discrepancy culminated in the issuance of an offer letter for Manager I, contrary to the public representation and pressuring the defendant to sign the offer to kick off the immigration process. By this time, since plaintiff had already declined other

interviews and job offers (Exhibit A) with notable companies like Google, plaintiff is left with no choice but to sign this offer. The interview process in general - including this one with Walmart - had taken over 3 months since initial contact with the recruiter. This was in the end of October 2021, companies usually don't conduct interviews between November and March, and if plaintiff were to decline this offer and start interviews in March or April, he might secure the next offer only by July/August of the following year. And since visa transfer takes about 3 to 4 months, it will be another year before Plaintiff secures another job. Defendants were intimately aware of these problems faced by immigrants, especially since Mr. Reddy himself was a person of Indian descent (EOF No. 42 at 11:1). Since the Interviewees were securing multiple offers and Defendants were having trouble (Prakash Decl., ¶19) hiring at Manager I, the scheme of baiting candidates for Manager II and switching the offer to Manager I was intended to be focussed at immigrants or persons of Indian origin. There is no evidence of Defendants downgrading job offers of non immigrants, none was shared despite repeated requests from the plaintiff (Exhibit Q)

This conduct aligns with established precedents where courts have recognized similar actions as direct evidence of discrimination. In *Trop v. Sony Pictures Entertainment, Inc.*, 129 Cal.App.4th 1133, 1145 (2005) , the court acknowledged that internal inconsistencies in hiring practices could substantiate claims of discrimination. Similarly, *Morgan v. Regents of University of California*, 88 Cal.App.4th 52, 67-68 (2000) , and *Iwekaogwu v. City of Los Angeles*, 75 Cal.App.4th 803, 816 (1999) , further support the notion that such evidence is indicative of discriminatory motives.

Moreover, in *Soria v. Univision Radio Los Angeles*, Inc., 5 Cal.App.5th 570, 591 (2016) , the court emphasized the significance of internal documentation that contradicts public actions as direct evidence. The plaintiff's case mirrors these precedents, demonstrating that the defendant's actions were not merely procedural errors but indicative of a discriminatory agenda.

**a.   Plaintiff Also Establishes a Prima Facie Case for Discrimination to Reinforce this Argument**

Plaintiff can easily establish the elements of his discrimination case. Absence of another case of a non immigrant's role being demoted to Manager I is in itself an evidence of discrimination.

**i.   Plaintiff is a member of a protected class:**   The plaintiff, as an immigrant of Indian origin and a male over the age of 40, belongs to multiple protected classes under anti-discrimination laws. These

PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART INC.'S MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

include protections against discrimination based on race, national origin, age, and gender.

**ii.   Plaintiff was Qualified and was adequately performing his job:**   Plaintiff has a Masters degree in Software Engineering with specialization in Machine learning, with over 20 years of Software Engineering experience. Plaintiff's qualification matched most of Directors of Engineering at Walmart (Exhibit R). And as detailed above (section), Plaintiff was doing an outstanding job at his role at Walmart as attested by the defendants themselves.

**iii.   Plaintiff suffered adverse consequences:**   Plaintiff suffered multiple adverse consequences shortly after filing an ethics complaint, the Plaintiff received negative feedback from Mr. Saha, indicating retaliation.

Within days of publishing details of the Medium article, Mr. Reddy initiated disciplinary action without substantiated evidence of performance issues. Evidence in Section [section] shows the Plaintiff's outstanding performance, acknowledged by the Defendants. According to Walmart's disciplinary policy (Exhibit M), the Plaintiff was entitled to a complaint and review process against the disciplinary action as an act of retaliation, which was ongoing when the Defendants changed the Plaintiff's disciplinary action status to "Red," harassed him, and created a hostile work environment (Section). Ultimately, the Plaintiff was terminated without explanation, violating due process and further exemplifying adverse actions. These evidences establishes the prima facie element required to oppose the Defendant's Motion for Summary Judgment.

**iv.   Circumstantial Evidence - Plaintiff endured adverse actions because of this protected status:** As established earlier (section), these adverse actions perpetuated on the Plaintiff can be directly attributed to his protected status. Defendants haven't provided any proof to the contrary. The plaintiff conducted a comprehensive analysis (Exhibit R) of the roles and positions within the organization. This research demonstrated that he was either overqualified or on par with the original role from which he was demoted. It was also executed among his immediate peers (Exhibit R), similarly situated individuals. The qualifications and experience of the plaintiff clearly align with, or exceed, the requirements of Senior Manager II and also Director roles. Additionally, the plaintiff has not observed any evidence of

non-immigrant individuals being demoted from a higher to a lower role in this manner. Multiple requests were made to HR (Exhibit Q) for data on similar cases, but none was provided, indicating that this adverse action was uniquely perpetuated against individuals with protected status. In *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) — The Supreme Court eliminated direct evidence requirements confirmed equal treatment of circumstantial and direct evidence under the preponderance standard. The Court emphasized that Congress imposed no heightened evidentiary showing and that circumstantial evidence may be more persuasive than direct evidence. The Court in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) further developed the pretext analysis by confirming that "proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive". Plaintiff also shared comparative analysis of how his peers compare (Exhibit R), to establish this levelling inconsistency was discriminatory.

**v.  Hostile Work Environment:**     The plaintiff has endured a hostile work environment after his ethics complaints, which constitutes an additional element of a prima facie case of national origin discrimination. During regular one-on-one meetings with the defendant, the plaintiff encountered an unexpected attendee on September 8, 2023, which was contrary to the agreed format of these meetings. This unexpected presence was unsettling and unprofessional, particularly when the defendant abruptly revealed that the plaintiff was placed on disciplinary action for performance, in violation of company policy. Subsequent meetings were scheduled by the defendant to discuss this disciplinary action. However, the plaintiff declined to attend these meetings for two primary reasons: first, the defendant failed to be forthcoming about the nature and purpose of these meetings; second, the defendant consistently refused to record the meetings, despite the plaintiff's expressed concerns about safety and transparency (Exhibit S). The defendant's consistent insistence on forcing the plaintiff to attend these unrecorded and inadequately explained meetings created a hostile, harassing work environment. The plaintiff communicated these concerns to all relevant parties and formally raised a complaint (Exhibit T), yet no remedial action was taken. The California Legislature reinforced this standard ie Cal. Gov. Code §12923 (b) , declaring that "a single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working

PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART INC.'S MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

environment".

Therefore, the defendant's argument is unsubstantiated and fails to address the nuanced realities of the case.

**b.     Walmart has FAILED to Established it Terminated Plaintiff's Employment For A Legitimate, Non-Discriminatory Reason**

Contrary to the defendant's assertion, Walmart has not established a legitimate, non-discriminatory reason for terminating the plaintiff's employment. The claim of persistent poor job performance is disputed (section) and lacks substantiation. No clear evidence has been provided. None of the protocols associate with poor job performance has ever been executed (Add more about this). The declarations and Exhibits cited fails to conclusively demonstrate any legitimate basis for disciplinary action and eventually termination. The reliance on poor job performance as a justification is a pretext for unlawful discrimination. The plaintiff's performance evaluations and achievements contradict the defendant's narrative (section), revealing inconsistencies in the purported reasons for termination. Furthermore, the defendant has not met its burden of proof in establishing a legitimate, non-discriminatory business reason. The circumstances surrounding the termination, including the lack of transparency and procedural irregularities, suggest discriminatory motives.

Therefore, the plaintiff can establish that the reasons provided by Walmart are merely a facade for discrimination and retaliation.

**c.     Plaintiff has CLEARLY Established That Walmart's Stated Reason For Terminating Plaintiff's Employment Was A Pretext For Unlawful Discrimination**

In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) — The Supreme Court confirmed that falsity of employer explanations constitutes circumstantial evidence probative of intentional discrimination that may be quite persuasive. The Court recognized that prima facie cases combined with pretext evidence can support discrimination findings without requiring additional independent evidence of discriminatory intent. The Court further developed the pretext analysis by confirming that "proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive". *Godwin v. Hunt Wesson*, Inc.,

150 F.3d 1217 (1998) — The 9th Circuit reconciled circuit precedents regarding direct versus circumstantial evidence of pretext, clarifying that "very little" direct evidence suffices to create a triable issue, while circumstantial evidence must be "specific" and "substantial." The court reversed summary judgment in favor of the employee-plaintiff, demonstrating that plaintiffs can successfully meet the pretext burden with substantial circumstantial evidence. That said, the 'same actor' argument that defendant is making here (EOF No. 42 at 21:12–22:3) does not apply (section).

There has been multiple instances (sections) of defendants providing either inconsistent, inadmissable or unrelated facts as detailed above. The Plaintiff's demotion from Manager II to Manager I was ostensibly justified by the assertion that the Manager II position entailed greater complexity and required competencies allegedly lacking in the Plaintiff. However, in late September 2023, the implementation of the 'Rewards Reimagined' program (Prakash Decl., ¶23) resulted in the merging of these two roles, thereby demonstrating that the roles were not substantively distinct. This merger exposes the prior justification as a pretext and misrepresentation. Plaintiff has also provided above (section) substantial circumstantial evidence there by establishing that the disciplinary actions and termination were pretext for unlawful discrimination and retaliation.

## 2. Walmart Is NOT Entitled To Summary Judgment On Plaintiff's Second Claim For Relief For Retaliation In Violation Of The FEHA

Direct evidence is defined as evidence which, if believed, proves the fact of retaliatory animus without inference or presumption. *Chisolm v. 7-Eleven, Inc.*, 383 F.Supp.3d 1032 (2019) . In cases where direct evidence of retaliatory motive exists, the plaintiff needs to produce "very little" evidence of pretext to create a triable issue as to the actual motivation of the employer *CCellini v. Harcourt Brace & Co.*, 51 F.Supp.2d 1028 (1999) . Around mid of June 2023 in one of one-on-one meetings, Plaintiff and Mr. Reddy discussed about the ethics investigation call he had with the ethics team. In that meeting, Mr. Reddy personally confessed (Prakash Decl., ¶24) that he could have, and should have fixed this downgrade and moved the Plaintiff to Senior Manager II role, but he didn't implying that he intends to keep him in Manager I, he seemed upset about having to deal with ethics investigation.

As the Sixth Circuit noted, "if an employer immediately retaliates against an employee upon learning of

his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation. Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action." *CCarter v. Dolce*, 647 F.Supp.2d 826 (2009) . The court found that when "the protected conduct and the defendant's response occurred in the very same day," this timing alone was "sufficient to give rise to an inference of retaliation".

As detailed below, Defendants initiated retaliatory Disciplinary action immediately, within days, after Plaintiff complained, and this happened multiple times. But unlike the Plaintiff in Carter case, here Plaintiff had only filed an ethics complaint, there wasn't a single complaint on Plaintiff till he filed that ethics complaint on June 6,2023. This is a direct evidence of Retaliation, Defendants are not entitled to a summary judgement on this claim.

### a. Plaintiff Also Establishes a Prima Facie Case for Retaliation to Reinforce this Argument

The plaintiff meets the requirements of the three-step burden-shifting framework from *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) , for retaliation claims in California as follows.

### i. Plaintiff Establishes He DID Engage In Protected Activities Under The FEHA

These are not mere grievances, each of these are protected under rule or other authority described below. In each of these complaints Plaintiff specifically alleges he has been discriminated, harassed and retaliated against. "The court held that informal complaints to supervisors can constitute protected activity under FEHA, but only if they protest behavior prohibited under the statute" *Wilson v. City of Fresno.*, 763 F.Supp.3d 1073 (E.D. CA 2025) .

- Ethics Complaint on Recruitment and Immigration Malpractices: The Plaintiff filed an ethics complaint highlighting recruitment and immigration malpractices, as detailed (EOF No. 42-1 , at Ex. C, D). This action is protected under FEHA, which prohibits discrimination in employment based on national origin, including recruitment and immigration practices, Cal. Gov. Code. §12940(a) .

- Complaints to HR on Violation of Protected Rights: The Plaintiff submitted complaints to HR and

other parties regarding violations of protected rights (EOF No. 42-1 , at Ex. C, D, Exhibit Q, R). These complaints are safeguarded activities under FEHA, aimed at addressing discrimination and ensuring a fair workplace, Cal. Gov. Code. §12940(h) .

- Escalation of Unjustly Closed Ethics Complaint: The initial ethics complaint was closed without justification or investigation, prompting the Plaintiff to escalate the matter (Exhibit N). This escalation is a protected activity under FEHA, as it seeks accountability and proper investigation of grievances, Cal. Gov. Code. §12940(h) .
- Publication of Article on Illegal Hiring Practices: The Plaintiff published an article about Walmart's illegal hiring practices, shared internally and during a global team meeting with leadership (Prakash Decl., ¶25). This publication, revealing the Plaintiff as a victim of the scam, is a protected activity under FEHA, as it exposes discriminatory practices, Cal. Gov. Code. §12940(h) .
- Ethics Complaint on Retaliation: The Plaintiff filed an ethics complaint highlighting retaliation for raising concerns about violations of protected status (Exhibit N). This complaint is protected under FEHA, as it addresses retaliatory actions taken by the employer, Cal. Gov. Code. §12940(h) .
- Complaint on Harassment and Ill-treatment: While awaiting resolution of the aforementioned complaints, the Plaintiff reported harassment and ill-treatment (Exhibit T). This complaint is a protected activity under FEHA, as it seeks to address and rectify a hostile work environment Cal. Gov. Code. §12940(j) .

These are indisputable, these complaints clearly establish that Plaintiff did engage in activities protected under FEHA and other statutes.

**ii. Plaintiff Suffered Adverse Employment Actions:** Shortly after filing emails and ethics complaints, plaintiff endured multiple adverse actions as detailed above.

**iii. Plaintiff Clearly Establishes Protected Activity Is Causally Related To His Alleged Adverse Employment Action** The Plaintiff clearly establishes that the protected activities are causally related to the alleged adverse employment actions, thereby satisfying the elements of a prima facie claim of retaliation.

In early June, the Plaintiff filed an ethics complaint, which led to the interrogation of Mr. Reddy by the

ethics team. This was immediately followed by Mr. Saha providing negative feedback as detailed in the facts section above.

On August 5, 2023, the Plaintiff published an article (Exhibit K) addressing illegal hiring and immigration practices, which was later disseminated within Walmart's internal teams and presented at a global team meeting with senior leadership around August 21, 2023. The very next day, on August 22, 2023, at 5:55 PM, Mr. Reddy initiated disciplinary proceedings against the Plaintiff (EOF No. 42-2 Exh E). This swift action further underscores the retaliatory intent linked to the Plaintiff's protected disclosures.

On August 28, 2023, the Plaintiff sent another email concerning the article and discrimination issues to the VP, HR, and others. This was promptly followed by Mr. Dalal issuing negative feedback (EOF No. 42-1 , at Ex. F) on August 29, 2023. The sequence of these events demonstrates a clear pattern of retaliation in response to the Plaintiff's protected activities.

The adverse actions taken by the Defendants in close succession to these protected activities while not providing credible evidence for job performance claims establish a causal connection, fulfilling the requirements for a prima facie claim of retaliation.

**b.  Plaintiff has CLEARLY Shown That Walmart's Stated Reasons For Terminating His Employment Was A Pretext For Unlawful Retaliation**

The plaintiff has clearly demonstrated (sections) that concerns about job performance were merely a pretext for retaliation after he raised his voice and filed complaints in accordance with Walmart's own policies and procedures.

**c.  Plaintiff has CLEARLY Established That Walmart's Stated Reasons For Terminating His Employment Was A Pretext For Unlawful Retaliation**

This seems to be a repeat of the above argument. Again, plaintiff has clearly demonstrated above that concerns about job performance were merely a pretext for retaliation after he raised his voice and filed complaints in accordance with Walmart's own policies and procedures. The Supreme Court in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) explicitly permits plaintiffs to reuse their prima facie evidence at the pretext stage, stating that such evidence "may be considered by the trier of

fact on the issue of whether the defendant's explanation is pretextual." The Ninth Circuit in *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217 (1998) held that plaintiffs must produce evidence in addition to their prima facie case to rebut the employer's showing, though this requirement does not necessarily prohibit consideration of prima facie evidence at the pretext stage.

### 3.   Walmart Is NOT Entitled To Summary Judgment On Plaintiff's Wrongful Termination In Violation Of Public Policy Claim

Federal district courts within the 9th circuit apply a more detailed five-element framework to prove wrongful termination in violation of public policy these are (i) an employer-employee relationship, (ii) termination or other adverse employment action, (iii) the termination of the plaintiff's employment was in violation of public policy, (iv) the termination was a legal cause of the plaintiff's damages, and (v) the nature and extent of plaintiff's damage, see *Scott v. Solano County Health and Social Services Dept.*, 459 F.Supp.2d 959 (2006) . Plaintiff successfully establishes all the elements of this framework as follows;

### i.   An Employer-Employee Relationship
This has already been established without any objection.

### ii.   Termination or Other Adverse Employment Action
As described in the previous section above, Plaintiff was subjected to multiple adverse employment actions and a casual link to the protected activities has already been established.

### iii.   The Termination Of The Plaintiff's Employment Was In Violation of Public Policy
Under this third element, it requires that the policy meet four specific criteria established in *Stevenson v. Superior Court*, 16 Cal.4th 880, 889-90 (1997) - "First, the policy must be supported by either constitutional or statutory provisions. Second, the policy must be 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of the discharge. Fourth, the policy must be 'fundamental' and 'substantial.'". Plaintiff has established in above sections adverse actions were in direct response and in violation of public policies.

**iv. The Termination as a Legal Cause and the Nature and Extent of the Plaintiff's Damages**

The original complaint outlines cause and the substantial damages the plaintiff endured due to the termination. Some of these damages include compensatory damages for lost back pay, interest, lost fringe benefits, and future lost earnings and benefits, totaling up to ten million dollars. The plaintiff also experienced emotional distress and pain and suffering, with claims reaching up to ten million dollars. Additionally, the plaintiff requests punitive damages as permitted by law. The complaint seeks reasonable attorney's fees under Cal. Lab. Code. §1194(a) , Cal. Lab. Code. §970 , and Cal. Lab. Code. §203 , as well as Cal. Gov. Code. §12940 et seq. Furthermore, the plaintiff seeks interest on unpaid and lost wages, along with the costs of the suit, and requests any further relief the Court deems appropriate. This highlights the extensive nature and extent of the damages claimed by the plaintiff.

## III. CONCLUSION

In light of the evidence and arguments presented, it is clear that genuine issues of material fact remain unresolved. Therefore, the motion for summary judgment should be denied, allowing the case to proceed to trial for a full and fair adjudication.

Date:   April 2, 2026            By:   _____
                                          Bhanu Prakash
                                          Plaintiff, Pro Se

PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART INC.'S MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES